UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

KEBBA KANTEH,                                                         Civil No. 05-313 DWF/AJB

           Petitioner,

v.
                                  **REPORT AND RECOMMENDATION**

TOM RIDGE, et al.,

           Respondents.


        This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner Kebba Kanteh is a citizen of the Gambia who lawfully entered the United States in 1988, but has been ordered to be removed by decision of an immigration judge issued in July 1998, and affirmed by the Board of Immigration Appeals (BIA) in December 2002. Petitioner has been detained since being arrested on November 10, 2003. In his petition he seeks an order barring his deportation and vacating the BIA determination that his application for asylum and withholding of deportation, and his request for voluntary departure, were properly denied.[1] Petitioner further moves for release from custody pending decision on his application,

---

[1] Respondent has filed a "Section 106 Notice" in this matter, therein advising the Court of recent federal legislation addressing the scope of judicial review of removal decisions. The act was signed into law on May 11, 2005 and is entitled "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005," Pub. L. No. 109-13, 119 Stat. 231. The provision of the new law that is pertinent to this action is referred to as the "REAL ID Act." Section 106 of the REAL ID Act provides that the courts of appeal are the exclusive venues for review of administrative orders of removal, deportation, or exclusion and that any habeas corpus cases challenging such orders in district court shall be transferred to the appropriate court of appeals and in the case of an petition that contains non-removal issues along with challenges to removal, that part of the case that challenges the order of removal shall be transferred. In its Section 106 Notice the respondent asserts that the petitioner challenges only the final administrative order of removal and this

including appeals.[2] Respondent contends that Mr. Kanteh is properly and effectively subject to removal and detention pending removal and denies that petitioner is entitled to the relief he requests. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). It is the recommendation of the Magistrate Judge that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this matter be denied to the extent petitioner requests release from detention.

**Background**

Petitioner Kebba Kanteh was born on October 2, 1966, and is a native of the Gambia, Africa. He entered the United States on a non-immigrant visitor's visa on April 23, 1988, but did not leave the country upon expiration of the visa. By application filed with the Immigration and Naturalization Service on September 5, 1995,[3] petitioner requested adjustment of his residence status based upon his marriage to a United States citizen, Norma Jean Powell, on June 27, 1995. The

---

case must therefore be transferred to the Eighth Circuit Court of Appeals for any further review. Petitioner responds to the notice by stating that his challenge is not limited to the final administrative order of removal and that he is attacking his continued detention as well. It is apparent to the Court that petitioner is indeed seeking review of his continued detention and that portion of the action should properly remain with the District Court. However, it is equally apparent that the petition contains allegations regarding the lawfulness of his removal and that the petitioner is seeking relief from the administrative order for his removal from the United States. Consequently, that part of this case that seeks review of the removal order will not be addressed in this report and recommendation except as a recommendation for transfer to the Eighth Circuit Court of Appeals.

[2] Petitioner contemporaneously filed a motion for temporary restraining order [Docket No. 2] barring deportation pending ruling on his petition for writ of habeas corpus. The motion for restraining order was made moot as a result of respondent's agreement not to deport the petitioner before a final decision is issued on the habeas corpus petition.

[3] Administrative Record [Docket No. 12]. Pages 12-16, Application to Register Permanent Residence or Adjust Status.

application was accompanied by a Petition for Alien Relative and related documents[4] submitted by Ms. Powell in support of the adjustment application. However, Ms. Powell withdrew her supporting petition on November 27, 1995, acknowledging that the purpose of the marriage was merely to obtain work papers for Mr. Kanteh.[5] The application was denied by notice dated November 28, 1995,[6] and deportation proceedings were commenced by INS Order to Show Cause dated November 29, 1995.[7] In March 1997, the petitioner filed an Application for Suspension of Deportation,[8] alleging extreme hardship based upon the likelihood that his American born daughter would be subject to female genital mutilation in Gambia.[9] On May 5, 1997, the petitioner filed an Application for Asylum and for Withholding of Deportation,[10] again asserting the likelihood that his daughter would be subject to circumcision and further asserting that his brother had been imprisoned in Gambia for plotting to overthrow the government.[11] Preliminary deportation hearings were held in 1996, and in those proceedings Mr. Kanteh conceded his removability.[12] A final hearing on deportation took place and

---

[4] Administrative Record, pp. 30-41, Petition for Alien Relative.

[5] Id., page 11, Powell handwritten note dated November 27, 1995.

[6] Id., pp. 8-9, 28-29, Decision on Application for Status as Permanent Resident.

[7] Id., pp 2-6, Order to Show Cause and Notice of Hearing.

[8] Id., pp. 42-53, Application for Suspension of Deportation.

[9] Id., page 42.

[10] Id., pp. 54-60, Application for Asylum and for Withholding of Deportation.

[11] Id., pp. 57-58.

[12] Id., page 104, Oral Decision of the Immigration Judge.

the petitioner was ordered deported to Gambia in a decision dated July 21, 1998.[13] The immigration judge specifically denied petitioner's separate applications for asylum, suspension of deportation, and withholding of deportation.[14] The immigration judge also denied voluntary departure as a matter of discretion.[15] The decision was timely appealed and was affirmed by the Board of Immigration Appeals on December 19, 2002.[16] Petitioner was represented by attorney Albert Usumanu in the deportation hearing and BIA proceedings.  It is asserted in the current petition, however, that the attorney moved his office prior to issuance of the BIA decision and the decision was not received by counsel or the petitioner, either because the decision was mailed to the wrong address or because counsel failed to advise the BIA of his address change.  In any event, petitioner was arrested on November 10, 2003,[17] pursuant to Warrant of Removal,[18] but without having received prior notice of the BIA determination. On November 19, 2003, attorney Usumanu filed a motion to reissue and redate the BIA decision.[19] The motion to reissue was denied by Order of the Board dated March 4, 2004, and was sent to the address of counsel as stated in the motion.[20]  This most recent denial Order was subsequently reissued

---

[13] Administrative Record., pp. 101-22.

[14] Id., pp. 101-02.

[15] Id., page 122.

[16] Id., pp.123-27, Notice of Appeal to the Board of Immigration Appeals, pp. 137-38, Decision of the Board of Immigration Appeals .

[17] Id., pp. 147-48, Record of Deportable/Inadmissible Alien.

[18] Id., page 139, Warrant of Removal/Deportation.

[19] Id., pp. 140-41, Motion to Reissue Decision dated December 19, 2002.

[20] Id., page 144, Order denying motion to reissue.

and mailed to counsel at a new address on April 7, 2004.[21]

Meanwhile, by certified mailing from INS dated November 24, 2003, petitioner was provided a written advisory regarding requirements for his cooperation in obtaining travel documents and otherwise cooperating in his removal.[22]  In a letter dated December 5, 2003, the Bureau of Immigration and Customs Enforcement (ICE)[23] advised the Consul General for Gambia that Mr. Kanteh had been order removed from the United States and the embassy's assistance in obtaining travel documents was requested.[24]  Necessary travel documents were not forthcoming,[25] and thereafter, on February 4, 2003, petitioner was given personal service of the written warning, along with specific instructions, regarding his cooperation with the removal process.[26]  On February 9, 2004, a custody review worksheet was completed and the reviewing officer determined that the petitioner was still contesting removal and was a substantial flight risk if released.  Continued detention was recommended[27] and Mr. Kanteh was promptly served notice of the decision.[28]  The Decision to

---

[21]  Administrative Record, pp. 145-46, Letter and Order copy.

[22]  Id., page 149, Warning for Failure to Depart.

[23] The Bureau of Immigration and Customs Enforcement is a agency of the Department of Homeland Security and is the successor to the INS.

[24]  Administrative Record, pp. 150-61, letter dated December 5, 2003, with attached documents.

[25]  Id., page 162, letter dated January 30, 2004.

[26]  Id., pp. 163-64, Warning for Failure to Depart with Instruction Sheet.

[27]  Id., pp. 165-70, Custody Review Worksheet.

[28]  Id., pp. 171-72, Decision to Continue Detention Following File Review dated February 9, 2004.

Continue Detention was served by certified mail delivery on March 15, 2004.[29] Removal remained unaccomplished and detention was continued, though petitioner was transferred from St. Paul, Minnesota, to a facility in Omaha, Nebraska, in October 2004, and travel documents were again requested from the Gambia embassy in December 2004.[30] In February 2005, petitioner's custody status was again reviewed, petitioner was again advised of the cooperation requirement, and detention was again continued.[31]

**Claims.**  This §2241 action in United States District Court was commenced by petition prepared with the assistance of newly retained counsel and filed on February 14, 2005. As grounds for relief the petitioner contends that pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001) and Clark v. Martinez, __ U.S. __, 125 S.Ct. 716 (2005), he is being unlawfully detained for a period longer that is reasonably necessary to effectuate his removal. Petitioner further alleges that he was denied substantive due process under the Fifth Amendment as a consequence of his inability to timely appeal the Board of Immigration Appeals December 19, 2002, decision to the Eighth Circuit Court of Appeals under circumstances in which he did not receive the mailed BIA decision. Finally, petitioner argues that he was taken into custody in violation of his right to procedural due process because he did not have proper notice and opportunity to be heard.[32] Respondent, on the other hand,

---

[29] Administrative Record, pp. 173-75, Decision to Continue Review dated March 8, 2004.

[30] Id., pp. 177-81, letter to Embassy of the Gambia dated December 14, 2004, with attachments.

[31] Id., pp. 182-86, Decision to Continue Detention dated February 3, 2005.

[32] Petitioner seemingly argues, or least asserts, that the BIA's single act of failing to advise him of its decision constitutes a due process violation with respect to both the removal and the detention.

asserts that continued detention is appropriate in light of petitioner's failure to fully cooperate in efforts to obtain travel documents; petitioner's failure to show that removal in the reasonably foreseeable future is not likely; and petitioner's repeated statements that he would not return to the Gambia, thereby marking him as a flight risk.  Respondent also contends that petitioner's due process claims could have been raised on direct review of a motion to reissue and therefore are not properly considered on habeas corpus petition, though in any event, petitioner did receive due process because the BIA entered a written decision which was mailed to counsel at his last known address and petitioner has not shown either ineffective assistance of counsel or prejudice resulting from his inability to appeal the BIA removal decision.

**Discussion**

Pursuant to the recently enacted "REAL ID Act," claims by petitioner Kebba Kanteh's in which he challenges the administrative order for removal and seeks to prevent his deportation may not be considered in this habeas corpus action and must be transferred to the Eight Circuit Court of Appeals.[33]  Nonetheless, his separate claim that he his entitled to release from detention pending removal is properly before the district court on petition under 28 U.S.C. § 2241.  Zadvydas v. Davis, 533 U.S. 678, 699, 121 S.Ct.2491, 2504 (2001).

---

With respect to the removal issue the matter must be transferred to the court of appeals pursuant to the REAL ID Act and with respect to notice and opportunity to be heard before detention, petitioner's right to due process likewise arises out of the removal proceedings and district court review is therefore precluded.

[33] Petitioner challenges removal based upon alleged due process violation arising out of his non-receipt of the Bureau of Immigration Appeals' order for removal and the resulting inability to submit a timely appeal to the Court of Appeals.  In this regard petitioner alleges ineffective assistance of counsel.  Petitioner also challenges the removal on the merits.

As applied to this matter 28 U.S.C. § 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). An alien in detention while awaiting removal from the United States is mandatorily detained for an initial period of three months. 8 U.S.C. § 1231(a)(2). This may be followed by an additional three months discretionary detention during which the detention remains presumptively valid. 8 U.S.C. § 1231(a)(1)(C); Zadvydas v. Davis, 121 S.Ct. at 2505. Where detention has exceeded the presumptively valid six month period and the alien has provided good reason and an appropriate showing to justify a belief that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing. Zadvydas, 121 S.Ct. at 2505. An alien is eligible for a conditional release upon demonstrating that removal in the reasonably foreseeable future is not likely. Clark v. Martinez, _ U.S. _, 125 S.Ct. 716, 722 (2005)(citing Zadvydas, 121 S.Ct. at 2491, 2498). Nonetheless, the six month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held . . . until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 121 S.Ct. at 2505.

Respondent contends that petitioner's continued detention beyond the six-month presumptive period is lawful under circumstances whereby the petitioner has not cooperated in his removal; removal in the reasonably foreseeable future is likely because travel documents have been requested at the diplomatic level; and the petitioner is a flight risk. Petitioner asserts that he is not responsible for the Gambian embassy's refusal to issue travel documents and circumstances relating to his family and residence belie the notion that he is a flight risk. Petitioner also challenges the claim that

he will likely be removed in the reasonably foreseeable future, insisting that his already extensive period of detention is evidence of respondent's inability to deport him.

Pursuant to 8 U.S.C. §1231, "[t]he removal period shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C). In this regard petitioner denies that he has taken any actions to obstruct his deportation and alleges that his wife has contacted the Gambia's embassy in an effort to secure travel documents, though no evidence relating to the substance of the contact is presented.[34] As proof for his position petitioner offers certified mail receipts indicating only that some item of correspondence was sent to and received by the embassy and the substance of that correspondence remains a mystery.[35] Respondent on the other hand has shown that the alien was advised in writing of his affirmative obligations to apply for travel documents[36] as required by 8 C.F.R. §241.4(g)(5), and there is no concrete evidence before the Court indicating that the petitioner has so complied with that obligation. Under these circumstances petitioner's continued detention is essentially a consequence of his own conduct and he might well be able to facilitate his own removal, thereby freeing himself from detention, by encouraging the Gambia's embassy to expedite processing of travel documents. See Abdel-Muhti v. Ashcroft, 314 F.Supp.2d

---

[34] Petition for Writ of Habeas Corpus, page 6, para. 22. [Docket No. 1].

[35] Memorandum in Support of Motion for Temporary Restraining Order, attachment H. [Docket No. 3].

[36] Administrative Record, pp. 164. Instruction Sheet to Detainee Regarding Requirement to Assist in Removal.

418, 427 (M.D. Pa. 2004)(citing Pelich v. I.N.S., 329 F.3d 1057, 1061 (9th Cir. 2003)).

Furthermore, the alien has the initial burden of showing no significant likelihood of removal in the reasonably foreseeable future. The alien cannot carry that burden, and the court cannot determine whether removal is in fact a remote possibility, when the alien does not fully and honestly cooperate with officials in obtaining travel documents from a foreign embassy. Lema v. I.N.S., 341 F.3d 853, 856 (9th Cir. 2003). Importantly, the petitioner in this instance does not appear to have made any sincere continuing effort to obtain travel documents as a counter to the agency's well-founded allegation of non-cooperation, and such inaction may appropriately be construed as a continuing refusal to cooperate. Id. at 857. Rather, petitioner relies primarily upon claims that the agency is not doing enough to obtain travel documents and that the length of time during which he has been detained, since November 2003, is proof in itself that respondents have been unable to deport him in a reasonable time. Those assertions have particularly minimal persuasive value where the alien has the obligation and ability to cooperate and thereby "has the keys [to freedom] in his pocket," and he himself "controls the clock" with which reasonable likelihood of future removal is measured. Id. at 856 (citing Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003)(quoting Zadvydas v. Davis, 121 S.Ct.2491, 2504 (2001)).

   The Court finds that petitioner Kanteh has not met his initial burden of showing no significant likelihood of removal in the reasonably foreseeable future and further concludes that the due process concerns which guided Zadvydas do not require rewarding the petitioner for failing to cooperate with officials in obtaining travel documents. In addition, the Court finds that petitioner has not made any showing that once he himself has requested necessary travel documents from the Gambia's consulate that it is unlikely that he will be removed in the reasonably foreseeable future and

holds that the amount of time which may be viewed as "the reasonably foreseeable future" will not begin to shrink until petitioner makes a showing of adequate cooperation.  Lema v. I.N.S., 341 F.3d at 856 n.6 (citing Zadvydas, 121 S.Ct. at 2505).

## RECOMMENDATION

Based on the foregoing discussion, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The petition for writ of habeas corpus pursuant to under 28 U.S.C. § 2241 be **dismissed with prejudice** with respect to claims challenging his detention.  [Docket No. 1];

2. The petition is this matter be transferred to the Eighth Circuit Court of Appeals pursuant to Section 106 of the REAL ID Act for review of petitioner's claims which challenge the administrative order of removal; and

3. Petitioner Kebba Kanteh's motion for temporary restraining order be **denied as moot** [Docket No. 2].

Dated:     June 30, 2005

                                                s/ Arthur J. Boylan
                                               Arthur J. Boylan
                                               United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before July 15, 2005.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.